**Lawrence H. McKENZIE, Appellant,**

v.

**Robert F. McCULLOCH and Maria F. McCulloch, Appellees.**

**No. 92–CV–763.**

District of Columbia Court of Appeals.

Argued Nov. 4, 1993.

Decided Dec. 2, 1993.

Lawrence H. McKenzie, pro se.

Robert F. McCulloch, Washington, DC, for appellees.

Before FERREN, STEADMAN, and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Lawrence H. McKenzie appeals from a judgment of the trial court, entered upon a jury verdict, for rent allegedly due and owing to his former landlords, Robert F. McCulloch and Maria F. McCulloch. Because the judge erroneously withdrew from jury consideration a critical issue of material fact—namely, whether certain allegedly substantial housing code violations had been abated at the time the McCullochs instituted a 170 percent increase in McKenzie's monthly rent—we reverse the judgment and remand the case for a new trial.

## I.

Prior to the institution of these proceedings in 1987, McKenzie had been renting a house from the McCullochs for many years. In 1986, the rent was $407 per month. On December 5, 1986, the McCullochs filed a petition for a hardship increase in the rent ceiling[1] pursuant to D.C.Code § 45–2522 (1990). On June 6, 1987, the Rent Administrator granted the petition, and the rent ceiling was increased from $407 to $1098 per month.[2] On July 1, 1987, the McCullochs increased McKenzie's rent to the new ceiling of $1098. McKenzie apparently failed to pay the increased rent and, on October 14, 1987, the McCullochs filed suit in the Superior Court for possession and for rent allegedly due and owing.

On November 27, 1987, over McKenzie's objection, the judge presiding in the Landlord and Tenant Branch entered a protective order requiring McKenzie to pay $1098 per month—the amount of the increased rent—into the registry of the court.[3] After initially making the payments specified in the protective order, McKenzie failed to do so beginning in July 1988, and the McCullochs filed a motion for judgment. *See Mahdi v. Poretsky Mgmt. Inc.*, 433 A.2d 1085 (D.C.1981) (per curiam). The motion was granted and, on May 17, 1989, a writ of restitution was issued. After further unsuccessful motions and appeals, McKenzie was evicted on June 29, 1989, rendering moot the McCullochs' claim for possession, but leaving unresolved the parties' differences over the amount of rent due and owing.

In June 1992, a jury trial was held on the landlords' claim for unpaid rent, and in order to determine the appropriate disposition of the funds which McKenzie had deposited in the registry of the court pursuant to the protective order. McKenzie, who is not an attorney, acted as his own counsel. Robert F. McCulloch, a member of our bar, represented himself and his wife.

At trial, McKenzie made two principal contentions, as well as numerous others. His first claim, which we will call the "rent increase claim," was that the higher rent which the McCullochs were now charging him was unlawful because substantial housing code violations existed at the time the increase was instituted, and because he had not received the notice required by law. His second claim, which we will call the "abatement claim," was that his monthly rent for the two years from July 1, 1987 to June 29, 1989 should have been abated because substantial housing code violations existed throughout that period.

The trial judge ruled that McKenzie's claim of deficient notice was technical and non-substantive, and that no impartial jury could reasonably find that the rent increase to $1098 was unlawful. The judge therefore did not allow the "rent increase claim" to go to the jury. The "abatement claim" was submitted to the jury, which found that McKenzie was entitled to a monthly reduction of $348 in rent each month for twenty-four months, thus reducing the monthly rent to $750.[4] The verdict effectively nullified almost exactly one half of the rent increase imposed by the McCullochs in 1987. Judg-

---

1. For esoterica relating to the distinctions between an increase in the rent ceiling and an increase in the rent, *see Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 550 A.2d 51 (D.C.1988).

2. According to the McCullochs' brief in this court, the Administrator's decision was sustained on September 6, 1989 by the District of Columbia Rental Housing Commission; by then, the rent increase had been in effect for more than two years. In 1991, this court affirmed in an unpublished memorandum opinion and judgment (MOJ). *McKenzie v. District of Columbia Rental Hous. Comm'n*, No. 89–1166 (D.C. Feb. 4, 1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991).

3. McKenzie's attempts to stay or overturn the protective order in various courts were unsuccessful.

4. McKenzie's theory had apparently been that because, in his view, increase in the monthly rent from $407 to $1098 was unlawful, any abatement based on housing code violations during the period from July 1987 to June 1989 should be taken from the original rent of $407. After the judge declined to submit the "rent increase" claim to the jury, however, the abatement was calculated from the augmented rent of $1098.

ment was entered in conformity with the jury's verdict. This appeal followed.

## II.

Although McKenzie makes numerous contentions on appeal, only one—the judge's disposition of McKenzie's rent increase claim—requires plenary consideration. Under the Rental Housing Act, the rent for any rental unit may not be increased above the "base rent" [5] unless "[t]he rental unit ... [is] in substantial compliance with the housing regulations...." D.C.Code § 45–2518(a)(1)(A) (1990). The Act further provides that a rental unit shall be considered in substantial compliance with the housing regulations if all substantial violations cited at the time of the last inspection were abated in timely fashion, and if

> the Department of Consumer and Regulatory Affairs has certified the abatement, or the housing provider or the tenant has certified the abatement and has presented evidence to substantiate the certification. *No certification of abatement shall establish compliance with the housing regulations unless the tenants have been given a 10–day notice and an opportunity to contest the certification.*

*Id.,* § 45–2518(b)(1) (emphasis added). McKenzie asserts, and Robert McCulloch conceded at argument before this court, that the required 10–day notice and opportunity to contest the certification had not been provided to McKenzie.[6] Accordingly, as Robert McCulloch also acknowledged at argument, a certificate of abatement could not conclusively establish, under the provisions of the statute, that the property was in substantial compliance with the housing regulations at the time the McCullochs almost tripled McKenzie's rent.

There was conflicting testimony at the trial. McKenzie testified that the McCullochs

had not abated pre-existing housing code violations, which he described in some detail. The McCullochs offered contrary evidence, including housing code violation abatement cards, testimony by a housing inspector, and their own testimony. The trial thus presented a classic credibility contest, which could only be resolved by the jury, and not by the judge. *See, e.g., Rich v. District of Columbia,* 410 A.2d 528, 532–34 (D.C.1979); *see also Brady v. Southern R.R. Co.,* 320 U.S. 476, 479–80, 64 S.Ct. 232, 234–35, 88 L.Ed. 239 (1943) (court may direct a verdict "[w]hen the evidence is such that *without weighing the credibility of the witnesses* there can be but one reasonable conclusion as to the verdict." (Emphasis added)).[7] Indeed, it appears from the jury's verdict on the abatement claim, by which half of the rent increase was wiped out for each of the twenty-four months, including July 1987, that the jury may have believed McKenzie, rather than the McCullochs and their witnesses, as to the condition of the premises in July 1987. Even if the judge's assessment of credibility would have been different, that is not dispositive.

## III.

For the foregoing reasons, the judgment appealed from is reversed and the case is remanded for a new trial.

*So ordered.*

---

**5.** "Base rent" means the sum of the rent legally charged or chargeable on April 30, 1985 and any duly approved rent increases since that time. D.C.Code § 45–2503(4) (1990).

**6.** There was disputed testimony at trial as to what, if any, notice of the increase McKenzie received. The McCullochs never claimed, however, that they served McKenzie with a notice

which advised him of his right to contest the certification within 10 days.

**7.** Robert McCulloch conceded at oral argument that the judge could not have taken the "rent increase" issue from the jury without making an unfavorable credibility determination regarding McKenzie's testimony.