Bernard TYREE, Appellant,

v.

Juanita EVANS, Appellee.

No. 97–FM–1177.

District of Columbia Court of Appeals.

Submitted Jan. 19, 1999.
Decided April 22, 1999.

Lexi Negin Christ, Washington, DC, filed a brief for appellant.

No appearance or brief for appellee.

Before SCHWELB and REID, Associate Judges, and PRYOR, Senior Judge.

SCHWELB, Associate Judge.

In this case of alleged domestic violence involving an unmarried couple, the trial judge issued a one-year civil protection order (CPO) against the defendant, Bernard Tyree, without permitting Tyree's attorney to cross-examine the complainant, Juanita Evans. Observing that unlike Mr. Tyree, Ms. Evans was not represented by counsel, the judge stated that Tyree "has no right to confront or cross-examine her. This is a civil proceeding." [1]

On appeal, Tyree contends that this total prohibition against any cross-examination of Ms. Evans was error. We conclude that although the judge was entitled to place reasonable limits on cross-examination, she erred at the trial stage by precluding cross-examination altogether. Accordingly, we reverse.

## I.

### THE TRIAL COURT PROCEEDINGS

On June 5, 1997, Ms. Evans filed a *pro se* petition and affidavit in which she requested a civil protection order against Mr. Tyree. Ms. Evans also asked that Tyree be required to vacate the apartment that the two of them shared.[2]

In her pleading, Ms. Evans checked a box indicating that she and Tyree had a "romantic/dating relationship." Ms. Evans alleged that on June 4, 1997, Tyree had punched her

---

1. We believe that the judge may have misspoken and intended to say "civil *protection* proceeding."

2. Prior to the trial on the merits, Ms. Evans moved to a shelter and therefore withdrew her request that Tyree be compelled to move out.

in the mouth, causing it to bleed. She also claimed that "[i]n the last five weeks, there has been [a] history of violence towards the petitioner." On the date that Ms. Evans filed her petition, Judge Stephen G. Milliken entered an *ex parte* fourteen-day temporary protection order pursuant to D.C.Code § 16–1004(d) (1997). A hearing on Ms. Evans' request for a one-year CPO was set for June 19, 1997 before Judge Zoe Bush.

On the scheduled trial date, Ms. Evans appeared *pro se*, while Mr. Tyree was represented by an attorney. At the beginning of the hearing, after ascertaining the nature of Ms. Evans' allegations, the judge advised Tyree that he could either consent to the entry of a CPO or contest the case. The judge then outlined her ground rules for a contested hearing, and she indicated firmly that Tyree's counsel would not be allowed to cross-examine Ms. Evans. The judge explained to Tyree that "if there's some area of inquiry you want to raise with me ... I may or may not pursue it," but she reiterated that she would conduct the proceeding and that there would be no cross-examination by Tyree's attorney.

In response to brief interrogation by the court, Ms. Evans testified that Tyree struck and abused her. Tyree's attorney stated that "[t]here is a question about Ms. Evans being arrested also before for ... assaultive conduct against Mr. [Tyree]." Ms. Evans inquired whether she should answer, but the judge directed her not to, because "I'm not asking you that." The judge stated that "[t]he court's focus is on the incident involved with June 4th."

The judge then asked Tyree if he was "willing to answer my questions." Tyree responded that he had nothing to say. The judge found that there was "good cause to believe that a family offense had occurred," and she issued a CPO in which she ordered Tyree not to assault, threaten, harass or physically abuse Ms. Evans. The judge also ordered Tyree to stay away from Ms. Evans and not to contact her in any way. In her order, the judge further directed Tyree to enroll in and complete a counseling program for alcohol abuse and for domestic violence.

The duration of the CPO was one year. Tyree noted a timely appeal.

## II.

## LEGAL DISCUSSION

A. *The right to cross-examine witnesses.*

Cross-examination "is beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 JOHN HENRY WIGMORE, WIGMORE ON EVIDENCE § 1367, at 32 (Chadbourn rev.1974); *see also California v. Green*, 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970) (quoting prior edition of WIGMORE); *Curry v. United States*, 658 A.2d 193, 199 (D.C.1995) (quoting *Green* and WIGMORE). "[It] is the principal means by which the believability of a witness and the truth of his [or her] testimony are tested." *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

"Where a witness cannot be cross-examined, the search for truth is severely impaired." *Curry, supra,* 658 A.2d at 199. "Whoever has attended to the examination, the cross-examination, and the re-examination of witnesses, and has observed what a very different shape their story appears to take in each of these stages, will at once see how extremely dangerous it is to act on the '*ex parte*' statement of any witness and still more of a witness brought forward under the influence of a party interested." 5 WIGMORE, *supra,* § 1367, at 34 (quoting BAYLEY, J. in *Berkeley Peerage Case,* 4 Comp. 401, 405 (1811)).

■■■ "The extent of cross-examination [of a witness] with respect to an appropriate subject of inquiry is within the sound discretion of the trial court." *Alford v. United States,* 282 U.S. 687, 694, 51 S.Ct. 218, 75 L.Ed. 624 (1931); *see also Mitchell v. United States,* 408 A.2d 1213, 1214 (D.C.1979) (quoting *Alford* ). "The trial judge always may limit cross-examination to prevent inquiry into matters having little relevance or probative value to the issues raised at trial." *Mitchell, supra,* 408 A.2d at 1214 (citations and internal quotation marks omitted). A complete denial of the opportunity to cross-examine, however, is impermissible. *See*

*Fortune v. Evans,* 58 A.2d 919, 920 (D.C. 1948).

■ The right to cross-examine witnesses called by the opposing party is not confined to any particular kind of proceeding. "In almost every setting where important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses." *Goldberg v. Kelly,* 397 U.S. 254, 269, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (citations omitted); *see also Glenbrook Rd. Ass'n v. District of Columbia Bd. of Zoning Adjustment,* 605 A.2d 22, 39 (D.C.1992) ("[i]n all adjudicative proceedings, cross-examination and confrontation are the handmaidens of trustworthiness in the face of a factual dispute") (citation and internal quotation marks omitted). The opportunity for cross-examination must be accorded not only to criminal defendants, but also to civil litigants. *Fortune, supra, ·*58 A.2d at 921; *see also The Ottawa,* 70 U.S. (3 Wall.) 268, 271, 18 L.Ed. 165 (1865)) (suit in admiralty); *Ziegler v. Ziegler,* 304 A.2d 13, 14 (D.C.1973) (per curiam) (divorce and child custody).

**B.** *Proceedings in which there is no right to cross-examination.*

There are, of course, contested proceedings in which it is impracticable to present live testimony, and in which cross-examination is therefore unavailable. In *Gerstein v. Pugh,* 420 U.S. 103, 120, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), for example, the Supreme Court held that the existence of probable cause for the purpose of setting a criminal defendant's conditions of release "can be determined reliably without an adversarial hearing." A court may likewise grant interim relief in a civil case, without hearing live testimony or providing an opportunity for cross-examination,. so long as the resulting

order is of limited duration. *See, e.g.,* Super. Ct. Civ. R. 65(b) (temporary restraining order effective for ten days may be issued on the basis of affidavits). In fact, when the present litigation began, Judge Milliken issued a temporary protection order *ex parte,* apparently without hearing live witnesses, *see* D.C.Code § 16–1004(d), and Tyree sensibly makes no claim that he was entitled to cross-examine Ms. Evans before the temporary order could be entered.

■ The trial-type proceeding at which the judge prohibited cross-examination in this case, however, is quite unlike a request for *pendente lite* relief in cases such as *Gerstein,*[3] at which no witnesses appear and no disposition is made of the merits of the case. On the contrary, a petition for a CPO is, in substance, a suit for a one-year injunction; the injunction may subsequently be extended. *See Cruz–Foster v. Foster,* 597 A.2d 927, 930–31 (D.C.1991). The hearing in this case at which cross-examination was prohibited therefore constituted the trial on the merits of a civil case in which equitable relief was sought.

Moreover, the stakes for Mr. Tyree were high. To be sure, the provision in the CPO ordering Tyree not to assault or threaten Ms. Evans did no more than command him to obey the law, but it was enforceable through the contempt power. A violation of the order would therefore subject Tyree to possible imprisonment, as well as to a fine. In addition, other provisions of the CPO in this case significantly limited Tyree's freedom of action. Tyree was forbidden to communicate with Ms. Evans in any way, and this proscription was likewise enforceable by contempt. Tyree was also required to attend counseling programs, without being given any choice as to whether he wished to enroll. Moreover, the CPO statute authorizes the

---

**3.** In *United States v. Green,* 216 U.S.App. D.C. 329, 670 F.2d 1148 (1981), the court upheld a defendant's right to cross-examine witnesses against him at a hearing on his motion to suppress evidence. The court held that *Gerstein v. Pugh, supra,*

is not to the contrary. In *Gerstein* the Supreme Court held that a probable cause determination for the sole purpose of pretrial detention must be made by a judicial officer, but

that this determination does not require "the full panoply of adversary safeguards—counsel, confrontation, cross-examination, and compulsory process for witnesses." 420 U.S. at 119, 95 S.Ct. 854. The holding in *Gerstein,* however, is limited to pretrial proceedings which cannot impair the accused's defense on the merits.

216 U.S.App. D.C. at 335 n. 8, 670 F.2d at 1154 n. 8.

court to require a respondent to vacate premises jointly leased by him and the complainant, *see* D.C.Code § 16–1005(c)(4), and, as we have noted, Ms. Evans initially sought such relief in her petition, but dropped the request after she moved out of the unit.[4]

■ An evidentiary hearing or trial in which a defendant is subject to injunctive relief for a year, and may be ordered out of his dwelling, falls well within the general rule that where questions of fact are disputed, a litigant has the right to cross-examine adverse witnesses. By the same token, such a hearing is outside the scope of the exception for *pendente lite* proceedings at which live witnesses do not appear and in which there is no occasion for cross-examination.

## C. Ms. Evans' pro se status.

The judge's decision not to permit Tyree's attorney to cross-examine Ms. Evans was apparently based, in part, on Ms. Evans' *pro se* status. We note at the outset that the record is silent as to why Ms. Evans was without counsel. But even if legal representation was unavailable to Ms. Evans, denial of Tyree's right to cross-examine her through his attorney was not an appropriate means of leveling the playing field.

■ We do not doubt that a trial judge may, without compromising requisite judicial impartiality, provide reasonable technical assistance to a *pro se* plaintiff in presenting her case. In assisting the unrepresented party, however, the judge may not preclude the opposing party from exercising the basic rights of a litigant. To put the matter in a different way, a *pro se* litigant's unrepresented status cannot permit her to escape the burdens imposed by the adversarial system, and especially the obligation to submit to cross-examination if she elects to testify. "[A]lthough a plaintiff has the right to proceed *pro se,* such a litigant can expect no special treatment from the court." *Abell v. Wang,* 697 A.2d 796, 804 (D.C.1997) (citations omitted).

## D. Questioning by the judge as a substitute for cross-examination.

■ Although the trial judge proscribed cross-examination of Ms. Evans by counsel for Tyree, she indicated that she might or might not propound to the witness questions suggested by Tyree or his attorney. As matters turned out, the judge declined to permit inquiry into the one subject raised by Mr. Tyree's attorney, namely, Ms. Evans' alleged past assaultive behavior against Tyree. See Part II E, *infra.* In any event, interrogation by the judge is not a sufficient substitute for cross-examination by counsel.

In domestic relations cases in particular, some alleviation of the adversarial character of the proceedings might well contribute to the prospects of a mutually satisfactory accommodation, and alternative modes of dispute resolution merit appropriate consideration. Nevertheless, in the absence of legislation taking this type of case out of the adversarial process, we do not believe that a trial court may dispense altogether with cross-examination of the opponent's witnesses by the parties or their counsel.

■ Under American practice, as distinguished from the practice under systems based on the Roman law, *see generally* 5 Wigmore, *supra,* § 1367, at 33 & n. 4, adversarial cross-examination is a right of the party against whom a witness is offered. *See Alford, supra,* 282 U.S. at 691, 51 S.Ct. 218; *Green, supra,* 216 U.S.App. D.C. at 335, 670 F.2d at 1154. This is so because "the interrogation of witnesses is ordinarily best left to counsel, who presumably have an intimate familiarity with the case." *Haughton v. Byers,* 398 A.2d 18, 21 (D.C.1979) (quoting *Jackson v. United States,* 117 U .S.App. D.C. 325, 326, 329 F.2d 893, 894 (1964)). In Professor Wigmore's view, interrogation by the judge is never a satisfactory substitute for cross-examination by the attorney for the opposing party, for the judge has "neither the strong interest nor the full knowledge that are required." 5 WIGMORE, *supra,*

---

4. At the time the judge announced that Mr. Tyree's counsel would not be permitted to cross-examine Ms. Evans, the request that Tyree be ordered to vacate the premises had not yet been withdrawn. Indeed, the judge indicated at one point that she would be receptive to a request for such a provision in the CPO she proposed to issue.

§ 1368, at 37 n.1. Where, as in this case, the judge conducted *all* of the interrogation, her statement that Mr. Tyree could suggest questions which the judge might or might not ask did not provide Mr. Tyree with the equivalent of the right to cross-examine Ms. Evans. *See generally Jenkins v. McKeithen,* 395 U.S. 411, 428–29, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

E. *Evidence of prior altercations.*

█ The trial judge, as we have seen, declined to inquire into allegations of prior assaults by Ms. Evans on Mr. Tyree. Because the issue is likely to arise again on remand, we address the merits of this ruling. We conclude that counsel for Tyree is entitled to conduct reasonable cross-examination of Ms. Evans with respect to these issues.

In *Cruz–Foster, supra,* this court discussed in some detail the kind of analysis that is appropriate in deciding whether to issue (or, in *Cruz–Foster,* to extend) a civil protection order. Rejecting the trial court's concentration solely on the most recent event, we held it to be

> *essential* that the court avoid an unduly narrow focus. One cannot determine whether [a CPO is appropriate] by simply examining the most recent episode. *Rather, the judge must be apprised of the entire mosaic.*

597 A.2d at 930 (emphasis added) (quoting *In re S.K.,* 564 A.2d 1382, 1389 (D.C.1989) (per curiam) (concurring and dissenting opinion)). Similarly, in *Clark v. United States,* 593 A.2d 186 (D.C.1991), a case in which a man who had killed his paramour claimed that he had done so in self-defense or by accident, we stated that

> [a]n attempt to restrict the evidence in a case of this kind to the events of the fatal evening would unreasonably cramp the inquiry, to the detriment of the search for truth.

*Id.* at 195.

█ An injunction is an extraordinary remedy. *Cruz–Foster, supra,* 597 A.2d at 931. Even under a remedial statute directed at domestic violence, the judge is obliged to apply established equitable principles. The

prior conduct of the parties in a marital or quasi-marital relationship may well affect the appropriate outcome. If, for example, the complainant had been the consistent aggressor in the past, and if Tyree's June 4 assault was an isolated and reactive incident, then this should surely be relevant to the question whether Tyree should be ordered to vacate jointly rented premises. "[T]he past history of the case is [therefore] critical to the determination [of the proper remedy]," *id.* at 930, and reasonable (though not unlimited) inquiry must be permitted.

We do not, of course, suggest that the issuance of a CPO is necessarily inappropriate where, in the past, the complainant has engaged in assaultive or threatening conduct. We hold only that, in order to determine what, if any, relief is appropriate, the court is bound to consider the "entire mosaic."

### III.

### CONCLUSION

For the foregoing reasons, the order from which this appeal was taken is vacated. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*