*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

22-CV-0952

RICHARD DEMUTH, APPELLANT,

v.

PETRA PROPERTY MANAGEMENT, APPELLEE.

Appeal from the Superior Court of the
District of Columbia
(2022-CA-002501-H)

(Hon. Donald Tunnage, Trial Judge)

(Submitted January 30, 2024                Decided August 15, 2024)

*Richard Demuth*, pro se.[1]

*William P. Cannon, III*, *Dayshon L. Wagner*, and *Peter Rauch* were on the brief, for appellee.

Before MCLEESE, HOWARD, and SHANKER, *Associate Judges*.

---

[1] Counsel for Mr. Demuth withdrew after this matter was submitted, citing Mr. Demuth's decision to terminate representation on April 10, 2024.

HOWARD, *Associate Judge*: Appellant Richard Demuth appeals a dismissal from the Superior Court's Housing Conditions Court[2] ("HCC") of his complaint, which alleged that his landlord, appellee Petra Property Management ("Petra"), had committed a number of housing code violations. The HCC dismissed Mr. Demuth's complaint based on a Department of Buildings ("DOB") inspector's contested assessment and on Petra's statement that a related case was being filed in the Landlord and Tenant ("L&T") Branch. We first determine that the HCC abused its discretion when it did not give Mr. Demuth the opportunity to cross-examine the housing inspector. We then conclude that the HCC's order of dismissal—rather than transfer to the Civil II Calendar—prejudiced Mr. Demuth because it frustrated his claims from being heard. We vacate the HCC's order and remand for the case to be transferred to a Civil II Calendar.

---

[2] At the time of these proceedings, the HCC was known as the Housing Conditions Calendar. *See Housing Conditions Court*, District of Columbia Courts, https://www.dccourts.gov/services/civil-matters/housing-conditions-calendar; https://perma.cc/GQ7S-694V (last visited June 18, 2024).

## I.     Background

In 2010, the District of Columbia Superior Court created the Housing Conditions Court as a problem-solving court within the Superior Court's Civil Division.[3]   Its goal is to "efficiently and quickly achieve compliance" with the District of Columbia Housing Code by giving tenants a venue to raise potential violations of regulations, which are usually investigated by a DOB housing inspector.[4]

On July 9, 2022, Mr. Demuth filed a complaint in the HCC against Petra that listed various District of Columbia Housing Code violations.  At an initial hearing about two weeks later, the HCC ordered an initial inspection to take place at Mr. Demuth's home by DOB Inspector Christina Hall to verify the violations in

---

[3] *D.C. Superior Court Announces Housing Conditions Calendar*, District of Columbia Courts (Apr. 28, 2010), https://www.dccourts.gov/sites/default/files/2017-06/2010-04-28_RentalConditionsCalendarAdvisory.pdf; https://perma.cc/9K8Z-Z9M6.

[4] *See* District of Columbia Courts, *Case Management Plan for the Housing Conditions Civil Calendar*, §§ I, VII (Apr. 2024), https://www.dccourts.gov/sites/default/files/Housing-Conditions-Case-Management-Plan.pdf; https://perma.cc/M8NS-2CR2   The housing inspection unit formerly operated under the Department of Consumer and Regulatory Affairs ("DCRA"); it now operates under DOB. *See* Department of Buildings Establishment Act of 2020, D.C. Law 23-269, 68 D.C. Reg. 1490 (Apr. 5, 2021); *see also Wong v. District of Columbia*, 314 A.3d 1236, 1240 n.6 (D.C. 2024) (describing transition from DCRA to DOB).

Mr. Demuth's complaint. Inspector Hall conducted the inspection and completed an inspection report, which identified five violations.

At a hearing on August 30, 2022, the HCC asked the parties for their positions on Inspector Hall's report. The parties disagreed on the extent of the violations and on whether the violations were abated. Mr. Demuth asserted that there were additional violations not reported in Inspector Hall's report, that repairs were not completed, and that the inspection was "casual" and "quick." Petra said that the issues in the report were abated and that the additional issues that Mr. Demuth brought up were of "his own making." Inspector Hall stated that the additional violations that Mr. Demuth brought up "[we]re new to [her]," and were not brought up during the inspection or in prior communications. The court asked the parties to share documentation about the state of repairs amongst themselves and Inspector Hall.

At the next hearing on September 16, 2022, the HCC asked the parties about their positions and requested an update regarding their exchange of information. Petra stated that it shared information with Mr. Demuth and Inspector Hall of what the property "looked like prior to the damage"—that is, before the "intentional destruction" Petra suggested Mr. Demuth caused. Mr. Demuth shared a proposed motion for the court to issue a subpoena to

obtain security camera evidence of an intruder, who he claimed caused the destruction. The HCC indicated to Mr. Demuth that his request for discovery was "not appropriate" since the HCC "do[es] not observe the rules of discovery" and "[e]videntiary hearings are extraordinary." The court then informed Mr. Demuth that it would ask for Inspector Hall's assessment during the next hearing.

Another hearing occurred on November 1, 2022, where Mr. Demuth explained that he had submitted a packet of information to Inspector Hall and Petra. Mr. Demuth stated that the five issues did not encompass all of the violations in his complaint and had not been abated. Petra disagreed. Inspector Hall concluded that the issues in the report were abated based on "documentation and several emails" from the parties, not a follow-up inspection of the property. She said she received Mr. Demuth's packet of additional information, but that the pictures in the packet were missing the dates that she requested. However, she noted that there did appear to be new violations, which "appear[ed] to be contrived." The court concluded that the five violations initially identified by Inspector Hall were abated and that the remaining question was whether the parties should address the remaining violations with the HCC or on an alternative calendar. The court provided three calendar options for the parties: (1) the parties could file an additional suit in the L&T Branch, (2) the court could certify the case to the Civil II Calendar, or

(3) the parties could remain in the HCC, in which case the court would hold an evidentiary hearing.

At the final hearing on November 17, 2022, Petra stated that a related pending matter "[wa]s being filed" before the L&T Branch. The matter would be based on a thirty-day Notice to Cure or Quit eviction notice and address the damages that Petra believed Mr. Demuth caused. Mr. Demuth replied, "Excuse me. I thought the purpose of this hearing today, based on your last order, was to determine what court you were going to refer the issue to, based on our arguments of the merits." In response, the HCC explained: "Right. And that's what I'm discussing now because it appears that this matter is already pending before a different court." The HCC stated that since "it appears that there is, right now, going to be a different lawsuit filed that will address the current condition of your unit . . . that calendar is better prepared to offer you the type of hearing that I think you want to have." The HCC reiterated that it found the five violations from Inspector Hall's report abated "based upon the representation of Inspector Hall," and maintained that it would not disturb the inspector's findings. The HCC concluded that the L&T Branch would be more appropriate for Mr. Demuth because the issues raised, including Mr. Demuth's request for a subpoena, required an evidentiary hearing. The HCC then dismissed the complaint without prejudice.

This appeal followed. In the interim, both parties have since filed separate lawsuits concerning their claims. Concerned about the procedural posture of the case, we asked the parties to submit supplemental briefing.

On January 9, 2023, nearly two months after the HCC dismissal, Petra filed a complaint in the L&T Branch, 2023-LTB-000325, which alleged that Mr. Demuth breached his lease by intentionally damaging the property. Mr. Demuth filed an answer denying Petra's breach-of-lease claim and demanding a jury trial. On May 3, 2023, the L&T Branch issued a Scheduling Order and set mediation for August 2, 2023. Mr. Demuth later failed to appear at the mediation after having exchanged discovery and responsive documents in the month prior; Petra filed a motion for sanctions against Mr. Demuth due to his failure to appear. The L&T Branch scheduled the parties for a forthcoming mediation session.

On January 12, 2023, Mr. Demuth filed another case in Superior Court, 2023-CAB-000181, regarding his unaddressed housing code violation claims. That case was assigned to the HCC. On February 27, 2023, Inspector Hall re-inspected the property and found multiple violations, some of which she determined were caused by Mr. Demuth. Because the property damage at issue was being adjudicated in Petra's pending L&T Branch case, Petra moved to dismiss Mr. Demuth's complaint, but the HCC denied Petra's motion. Mr. Demuth later failed to appear at

a subsequent hearing on August 15, 2023, and the HCC dismissed the new case without prejudice for want of prosecution.

## II.    Standard of Review

We review a trial court's dismissal without prejudice under the abuse of discretion standard. *See Hailemariam v. Zewdie*, 291 A.3d 213, 216 (D.C. 2023) (reviewing the appropriateness of an HCC dismissal under the abuse of discretion standard). When we review whether the HCC "exercised its discretion erroneously," we must "determine whether the decision maker failed to consider a relevant factor, whether he relied upon an improper factor, and whether the reasons given reasonably support the conclusion." *Ford v. Chartone, Inc.*, 908 A.2d 72, 84 (D.C. 2006) (internal quotation marks and citation omitted). "[The HCC] abuses its discretion if its decision is supported by improper reasons . . . or reasons which contravene the policies meant to guide the trial court's discretion." *Edwards v. United States*, 295 A.3d 1125, 1133 (D.C. 2023) (internal quotation marks omitted). "[A] dismissal of the complaint—even one without prejudice—[that] could have adverse consequences for the plaintiff . . . would be error or an abuse of the court's discretion." *Hailemariam*, 291 A.3d at 216. The abuse-of-discretion standard also applies to our review of a trial court's limitation or denial of the opportunity to cross-examine or confront a witness. *See Tyree v. Evans*, 728 A.2d 101, 103-04 (D.C.

1999) (citing *Alford v. United States*, 282 U.S. 687, 694 (1931); *Fortune v. Evans*, 58 A.2d 919, 920 (D.C. 1948)).

### III.    Discussion

We determine that the HCC exceeded its discretion when it found that five of the violations Mr. Demuth alleged were abated. We conclude, further, that the HCC exceeded its discretion when it dismissed Mr. Demuth's complaint because its dismissal ultimately prejudiced Mr. Demuth.

### A.    The HCC Exceeded Its Discretion in Denying an Opportunity to Cross-Examine or to Certify to the Civil II Calendar

The HCC exceeded its discretion when it based its abatement findings on Inspector Hall's assessment without providing Mr. Demuth a chance to cross-examine Inspector Hall or certifying the case to the Civil II Calendar.

This court has stressed the importance of "an opportunity to confront and cross-examine adverse witnesses" when "important decisions turn on questions of fact." *Tyree*, 728 A.2d at 104 (quoting *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970)). In *McKenzie v. McCulloch*, we reversed an L&T Branch judgment after the judge withdrew from jury consideration a key fact: whether certain housing code violations had been abated prior to a 170% increase in rent. 634 A.2d 430, 430 (D.C. 1993). A tenant testified in "some detail" that the violations had not been abated; a landlord

then offered contrary evidence that included testimony by a housing inspector. *Id.* at 432. We held that the landlord's evidence of abatement was "not dispositive," but rather, in the face of the tenant's contrary testimony, "presented a classic credibility contest, which could only be resolved by the jury, and not by the judge." *Id.* A through line of *Tyree* and *McKenzie* is that when a factual issue arises that raises a "credibility contest," *id.*, a party should not lose the opportunity to raise such a contest—even in a problem-solving setting like the HCC. Indeed, it need not under the terms of the HCC Case Management Plan, which contemplates the same in allowing for evidentiary hearings or, more commonly, transfer, when such issues arise. *Case Management Plan for the Housing Conditions Civil Calendar*, *supra*, § IX.

In this case, then, the HCC should have provided that opportunity by either holding an evidentiary hearing and allowing for cross-examination or certifying to the Civil II Calendar. Mr. Demuth listed at least thirteen housing violations in his initial Housing Code Violations complaint, such as peeling paint in the bathroom, plumbing issues with a bathroom sink, a malfunctioning toilet, missing blinds, and

inadequate heating.[5]  After her inspection, Inspector Hall reported five violations to the HCC: (1) for the entire unit, "Surface not maintained in good condition;" (2) for the living room, "Wall work not completed in a workmanlike manner;" (3) for the bathroom, "Lavatory sink not maintained in good condition;" (4) for the bathroom closet, "Transitional plate not maintained free from hazardous condition;" and (5) for the entry door, "Door not maintained in good condition[.]"  At the August 30, 2022, hearing, Inspector Hall reiterated that these violations existed as of the July 22 inspection she conducted, while Petra's counsel claimed that these were issues "of [Mr. Demuth's] own making," and that after making repairs, "the tenant continues to take these repairs apart."  In addition, Mr. Demuth complained to the HCC that Inspector Hall omitted a number of violations that he attempted to bring to her attention, including a problem with his toilet flushing, moisture in his bathroom, and reglazing of his bathtub.  Inspector Hall stated that Mr. Demuth had referred to these issues for the "first time" at the hearing.

---

[5] Mr. Demuth's opening brief referred to nineteen Housing Code violations in the complaint, but his reply brief referred to thirteen violations.  In any event, it is unclear from the record whether some or most of these allegations went completely unaddressed, or were found unsubstantiated and thus not reported.

As the hearings progressed, the HCC continued to—in its own words—"rel[y] on Inspector Hall as the investigator and the ultimate fact finder with respect to violations."[6]  At subsequent hearings on September 16, November 1, and November 17, 2022, Mr. Demuth argued the violations were ongoing.  Since the HCC's findings were "based upon the representation of Inspector Hall," the court maintained that it would not disturb the inspector's findings.  All in all, before the HCC made its findings, Mr. Demuth did not have the chance to cross-examine Inspector Hall before the HCC either about whether the violations he disputed were abated or about the other violations she allegedly failed to document.

Petra raises two counterpoints that we do not find convincing.  Petra first argues that Mr. Demuth waived his cross-examination rights because he did not share his objections in accordance with the HCC's order for the parties to share

---

[6] The HCC erred to the extent it treated the inspector as the finder of fact.  While the inspector assigned by DOB is a "critical component of the calendar," the inspector's report only "generally provide[s] the basis for the Court's assessment of the existence and abatement of housing code violations."  *Case Management Plan for the Housing Conditions Civil Calendar*, *supra*, §§ I, VII.  The inspector acts akin to a court-appointed expert to aid the court in fulfilling its duty as the finder of fact.  But the HCC noted at the November 17, 2022, hearing that it found the violations abated and "relie[d] on Inspector Hall as the investigator and the *ultimate fact finder* with respect to violations" (emphasis added).  Of course, the HCC may have simply misspoken.  To the extent it did not, however, it was error for the HCC to delegate its authority to the third-party DOB inspector.

documentation with one another. But that order was an order for documentary "evidence that [Mr. Demuth] ha[s], including the police report about an unauthorized entrance into [Mr. Demuth's] unit, and the other matters that [Mr. Demuth is] describing"—not for objections. Petra further argues that subjecting a housing inspector to cross-examination under oath "in every contested case" would adversely affect the HCC. Yet in thousands of cases per year, and across both the Superior Court and the Office of Administrative Hearings, that is exactly what inspectors of enforcement agencies, including housing inspectors, in the District are subject to.

Here, the HCC erred by failing to allow Mr. Demuth the chance to cross-examine the DOB inspector or transferring the case to the Civil II Calendar, where Mr. Demuth could challenge the inspector's findings, after a credibility contest arose, under the terms of its case management plan. We therefore set that determination aside.

### B. The HCC's Dismissal Prejudiced Mr. Demuth

The HCC exceeded its discretion when it dismissed, rather than transferred to the Civil II Calendar, the case because Mr. Demuth was prejudiced by the dismissal. Below, we compare our prior case on HCC dismissal with the events in this case. We then explain why we hold that the HCC erroneously suggested that Petra's

anticipated L&T action would address Mr. Demuth's claims and that the HCC failed to provide Mr. Demuth with sufficient information about where to file for the relief he sought, ultimately prejudicing him as an unrepresented party.

The HCC, a problem-solving court, has "discretion to manage the Calendar consistent with its purpose efficiently and quickly to secure compliance with housing code regulations." *Hailemariam*, 291 A.3d at 215-16 (quoting District of Columbia Courts, *Case Management Plan for the Housing Conditions Civil Calendar*, § IX (Apr. 2024), https://www.dccourts.gov/sites/default/files/Housing-Conditions-Case-Management-Plan.pdf). When the HCC faces issues that "cannot be addressed on the Housing Conditions Civil Calendar without adversely affecting the Court's ability to provide efficient and expedited enforcement of housing code regulations," the HCC may "certify the case to a randomly assigned Civil [II] Calendar or dismiss it without prejudice so that the plaintiff can file the case on a Civil [II] Calendar." *Id.*

In *Hailemariam*, we held that the HCC did not abuse its discretion when it dismissed without prejudice—rather than transferred—a tenant's complaint against her landlord so that she "could refile [her] case on the Civil [II] Calendar." *Id.* at 215-17. The parties disputed matters including the "scope of the tenancy, what part of the house had been rented to [the tenant], and whether the lease obligated the

landlord to provide and repair a bathroom on the first floor of the dwelling"—matters the HCC concluded required "more extensive litigation." *Id.* at 214-15. The HCC, after having consulted with the Civil Division regarding whether the case should be filed there, dismissed the case so that the tenant could "file a complaint alleging her [landlord's] breach of contract and outlining her basis for her claim that her lease agreement with the landlord covers the bathroom downstairs." *Id.* at 215. "Following the dismissal of her complaint without prejudice, appellant filed a new complaint for damages and injunctive relief in the Civil Division of Superior Court. This complaint, No. 2021 CA 003168B, is still pending on the Superior Court's docket." *Id.* The complaint was assigned to the Civil II Calendar. There, we concluded that dismissal was not poised to prejudice the tenant: it would not, for example, trigger a statute of limitations that would preclude the tenant's claims, prevent the tenant from litigating her claims, or burden the tenant (who was proceeding with fees and costs waived) with an additional filing fee. *See id.* at 216 n.3.

Unlike the dismissal in *Hailemariam*, the dismissal here appears to have prejudiced Mr. Demuth, who was unrepresented. The HCC in *Hailemariam* expressly advised the tenant about filing a case to get to the Civil II Calendar and the tenant had done so successfully without any additional prejudicial factors, such as additional cost, beyond potential delay. This made the dismissal "functionally

equivalent" to a certification to the Civil II Calendar, which we agreed would provide "more flexibility and the opportunity [for the tenant] to expand her lawsuit." *Id.* at 216-17.

By contrast, here, the HCC erroneously suggested that Mr. Demuth's claims could be addressed in Petra's yet-to-be-filed L&T case. In attempting to give Mr. Demuth access to an evidentiary hearing, the HCC stated that since "it appears that there is, right now, going to be a different lawsuit filed that will address the current condition of your unit . . . [the L&T Branch] is better prepared to offer you the type of hearing that I think you want to have." But the L&T Branch only permits landlords to initiate claims; dismissal thus required Mr. Demuth to await his landlord's filing before proceeding in that branch. *See* District of Columbia Courts, *Civil Division Landlord and Tenant Branch Case Management Plan* 4 (Feb. 2021), https://www.dccourts.gov/sites/default/files/matters-docs/Case-Management-Plan-Landlord-and-Tenant-Branch.pdf; https://perma.cc/P6KS-TQYZ (explaining that "most cases in the L&T Branch are brought by landlords seeking to evict tenants for nonpayment of rent or for some other violation of the lease" and that while "[t]enants may not file complaints in the L&T Branch," "a tenant who is sued for nonpayment of rent in the L&T Branch can file a counterclaim"). In an L&T Branch case, Mr. Demuth could not contest housing code violations—the purpose of his complaint—but only make counterclaims

regarding those violations as his defense against eviction. *See* Super. Ct. L&T R. 5(b)(1). We also take Mr. Demuth's point that, under the terms of the HCC Case Management Plan, an HCC case should "ordinarily proceed" if a landlord files a subsequent complaint in the L&T Branch. *Case Management Plan for the Housing Conditions Civil Calendar*, *supra*, § IX.

The HCC did refer to the Civil II Calendar or an evidentiary hearing as options that would allow Mr. Demuth to have the kind of hearing he was seeking, before Petra raised the L&T case, which it then solely focused on. Mr. Demuth did not ultimately receive instruction beyond that he could seek testimony or an evidentiary hearing in the L&T Branch. Mr. Demuth, nonetheless, proactively sought to file another civil case, potentially mitigating some of the prejudice he faced. However, without any further instruction, he filed a housing code complaint form with the D.C. Superior Court Civil Actions Branch—resulting in his case being routed right back to the HCC. Even if Mr. Demuth filed a general complaint form, it is highly likely he would have been routed to the HCC again.

While it can be fairly said that the HCC raised the possibility of filing a case on the Civil II Calendar, such a statement to an unrepresented litigant, absent instructions like those in *Hailemariam*, provides little help in getting there compared to transfer. When a civil action is filed with the Civil Actions Branch, a party does

not select their calendar of choice; the Civil Actions Branch evaluates the complaint and determines on which calendar a given complaint should be. In turn, an unrepresented litigant could end up in a purgatorial cycle of frustrated effort for the sin of lacking the legal know-how to file a complaint with claims that would route them to the Civil II Calendar.

Such a cycle of delay in access to an appropriate hearing—or frustration from an inability to access such a hearing—can be prejudicial to an unrepresented litigant. Housing code violations have some urgency to them, which compounds the concern. That is why we recognize that a decision not to transfer a case from the HCC to the Civil II Calendar may deprive a tenant of "the advantages of an accelerated determination" of claims of Housing Code violations. *Hailemariam*, 291 A.3d at 217. In this case, Mr. Demuth was ultimately unable to get his claims before an appropriate calendar and, as a result, unlike the plaintiff in *Hailemariam*, did not get the benefit of "amend[ing] and enlarg[ing] h[is] complaint to seek damages and other relief that [he] could not seek in a case on the Housing Conditions Calendar." *Id.* at 217 n.4.

In short, unlike dismissal in *Hailemariam*, the dismissal of Mr. Demuth's case was not the functional equivalent of a transfer to the Civil II Calendar. The HCC did not advise Mr. Demuth about filing for the relief he sought, incorrectly advised

him that he would get the relief he sought in the L&T Branch, and when Mr. Demuth then filed another civil action, he was routed back to the Housing Conditions Court. Because the trial court's order of dismissal rather than transfer was prejudicial to Mr. Demuth, we vacate that order and remand for the case to be transferred to a Civil II Calendar.

## IV.    Conclusion

For the foregoing reasons, we vacate the judgment of the HCC.

*So ordered.*